[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11347
_____

D.C. Docket No. 3:17-cv-00262-MMH-JBT

CAMILLE BURBAN,

Plaintiff - Appellant,

versus

CITY OF NEPTUNE BEACH, FLORIDA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 5, 2019)

Before ED CARNES, Chief Judge, MARTIN, and ANDERSON, Circuit Judges.

MARTIN, Circuit Judge:

The Law Enforcement Officers Safety Act ("LEOSA") allows "a qualified

retired law enforcement officer . . . who is carrying the identification required by

[the Act]" to "carry a concealed firearm," notwithstanding most State or local restrictions. 18 U.S.C. §§ 926C(a), (b). Camille Burban, who is a retired police officer formerly employed by the Neptune Beach Police Department ("the Department"), sued the City of Neptune Beach, Florida seeking to have it issue her the type of identification card required by LEOSA. The District Court dismissed Ms. Burban's amended complaint, finding that LEOSA does not give rise to a federal right enforceable under 42 U.S.C. § 1983. After careful review, and with the benefit of oral argument, we affirm.

## I.

In March 2017, Camille Burban sued Neptune Beach, Florida seeking to enforce her individual rights she believes are granted to her by the Law Enforcement Officers Safety Act, 18 U.S.C. § 926C. LEOSA permits qualified active and retired law enforcement officers who meet certain conditions to carry a concealed firearm anywhere in the United States, even if State or local law would ordinarily prohibit it. See id. §§ 926B(a), 926C(a). But see id. § 926B(b) (establishing that LEOSA does not supersede laws restricting firearms on private property or State or local government property); id. § 926C(b) (same). Section 926C, which is divided into five subsections, addresses retired officers.

Subsection (a) provides:

> Notwithstanding any other provision of the law of any State or any political subdivision thereof, an individual

2

> who is a qualified retired law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce, subject to subsection (b).

Id. § 926C(a).  As set out in subsection (c), a "qualified retired law enforcement officer" is defined as a person who, among other things, "separated from service in good standing," "served as a law enforcement officer for an aggregate of 10 years or more," and has met certain firearms training standards during the most recent 12-month period.  See id. § 926(c) (establishing seven conditions for recognition as a "qualified retired law enforcement officer").

Subsection (d) sets out two options for the type of identification a qualified retired law enforcement officer must possess in order to lawfully carry a concealed weapon under LEOSA.  Option one is:

> [A] photographic identification issued by the agency from which the individual separated from service as a law enforcement officer that identifies the person as having been employed as a police officer or law enforcement officer and indicates that the individual has, not less recently than one year before the date the individual is carrying the concealed firearm, been tested or otherwise found by the agency to meet the active duty standards for qualification in firearms training as established by the agency to carry a firearm of the same type as the concealed firearm[.]

Id. § 926C(d)(1).  Option two is "a photographic identification issued by the agency" that identifies the person as retired law enforcement together with a

3

firearms certification issued no more than a year ago by either "the State in which the individual resides or by a [qualified] certified firearms instructor." Id. § 926C(d)(2). The firearms certification must show that the retired officer met the active duty standards "as established by the State, to carry a firearm of the same type as the concealed firearm," or, if the State does not have such standards, "standards set by any law enforcement agency within that State to carry a firearm of the same type as the concealed firearm." Id. § 926C(d)(2)(B)(I), (II). Finally, subsection (e) defines "firearm" and "service with a public agency as a law enforcement officer." Id. § 926(e).

According to Ms. Burban's amended complaint, she was an officer with the Department for more than ten years before she retired from service in 2013. In October 2016, she asked the Department to issue her the type of photographic identification card required by LEOSA. The Department denied her request, explaining that under its policy, these cards are issued only to officers who retired in good standing and who qualify with a Department-certified firearms instructor. The Department policy also requires an officer to serve for at least fifteen years to be eligible to receive an identification for LEOSA purposes, even though the statute requires just ten. Ms. Burban's later petitions for clarification about the Department's reasons for denying her request went unanswered.

Ms. Burban's suit challenged the Department's requirements as inconsistent with federal law.  More to the point, Ms. Burban asserted that she is a qualified retired law enforcement officer as defined in LEOSA.  She said the City's refusal to supply her with LEOSA-compliant identification deprived her of federal rights conferred upon her by LEOSA and enforceable under 42 U.S.C. § 1983.

The City moved to dismiss Ms. Burban's amended complaint.  The District Court applied the framework set out in Blessing v. Freestone, 520 U.S. 329, 117 S. Ct. 1353 (1997).  In doing so, the District Court found that LEOSA did not give Ms. Burban an individually enforceable federal right and dismissed her complaint for failure to state a claim on which relief may be granted.  This is Ms. Burban's appeal.

## II.

"We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff."  Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010) (quotation marks omitted).

5

### III.

This appeal must address whether LEOSA creates a right enforceable under 42 U.S.C. § 1983 to LEOSA-compliant, agency-issued identification. As set out below, we conclude that it does not and therefore affirm the District Court.

### A.

Section 1983 provides a private cause of action against any person who, under color of state law, deprives an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983 actions may be brought to enforce rights created by federal statutes as well as by the Constitution. See Maine v. Thiboutot, 448 U.S. 1, 4–8, 100 S. Ct. 2502, 2504–06 (1980). But "to seek redress through § 1983 . . . a plaintiff must assert the violation of a federal right, not merely a violation of federal law." Blessing, 520 U.S. at 340, 117 S. Ct. at 1359 (emphasis in original).

In Blessing, the Supreme Court described the framework for deciding whether a federal statute creates rights enforceable under § 1983. First, a court must break down a plaintiff's complaint into "manageable analytic bites," identifying "exactly what rights, considered in their most concrete, specific form, [plaintiff] [is] asserting." Id. at 342, 346, 117 S. Ct. at 1360, 1362; see, e.g., Harris v. James, 127 F.3d 993, 1005–1012 (11th Cir. 1997) (assessing provision-by-

6

provision whether the Medicaid Act creates a federal right to transportation to and

from medical providers); cf. Doe 1-13 ex rel. Doe, Sr. 1-13 v. Chiles, 136 F.3d

709, 714–15 (11th Cir. 1996) (explaining that the Harris panel's conclusion that

the Medicaid Act did not create a federal right to transportation to and from

medical providers did not reach the question of whether any provisions of that

same Act created a federal right to reasonably prompt provision of medical

assistance).  It is a mistake for a court to take a "blanket approach" to determining

whether a statute is rights-creating.  Blessing, 520 U.S. at 344, 117 S. Ct. at 1361.

Once the right being asserted has been identified, a court must consider three

factors:

> First, Congress must have intended that the provision in
> question benefit the plaintiff.  Second, the plaintiff must
> demonstrate that the right assertedly protected by the
> statute is not so 'vague and amorphous' that its
> enforcement would strain judicial competence.  Third,
> the statute must unambiguously impose a binding
> obligation on the States.  In other words, the provision
> giving rise to the asserted right must be couched in
> mandatory, rather than precatory, terms.

Id. at 340–41, 117 S. Ct. at 1359 (citations omitted).  If all three of these factors are

satisfied, this creates a rebuttable presumption that a right is enforceable under

§ 1983.  Id. at 341, 117 S. Ct. at 1360.  However, a defendant is able to rebut that

presumption by showing Congress expressly or impliedly foreclosed a remedy

under § 1983.  Id.  If a provision fails to meet any one of the three Blessing factors,

7

it does not provide a person with a federal right enforceable under § 1983. See Arrington v. Helms, 438 F.3d 1336, 1345 (11th Cir. 2006).

Since Blessing, the Supreme Court has explicitly "reject[ed] the notion that . . . anything short of an unambiguously conferred right" may support a cause of action brought under § 1983. Gonzaga Univ. v. Doe, 536 U.S. 273, 283, 122 S. Ct. 2268, 2275 (2002). Thus, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit . . . under § 1983." Id. at 286, 122 S. Ct. at 2277.

B.

We need not belabor our analysis because no provision of § 926C, read individually or together, "unambiguously impose[s] a binding obligation on the States" to give agency-issued, LEOSA-compliant identification to retired law enforcement officers.[1] Blessing, 520 U.S. at 341, 117 S. Ct. at 1359. The failure to satisfy one of the Blessing factors dooms Ms. Burban's complaint. See Arrington, 438 F.3d at 1345. We therefore affirm its dismissal.

A provision unambiguously imposes a binding obligation on the States when "the asserted right [is] couched in mandatory, rather than precatory, terms." Blessing, 520 U.S. at 341, 117 S. Ct. at 1359. We typically look to the language of

---

[1] This case does not require us to reach the question of whether LEOSA might create any other enforceable federal rights, so we do not. Neither do we address whether Ms. Burban might have a cause of action under state law.

8

a provision for words like "must" and "shall."  See Kingdomware Techs., Inc. v. United States, 579 U.S. __, 136 S. Ct. 1969, 1977 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."); see also, e.g., Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 512, 110 S. Ct. 2510, 2519 (1990) (concluding the Boren Amendment, which provided that a State plan "'must' 'provide for payment . . . of hospital[s]' according to rates the State finds are reasonable and adequate," is cast in mandatory terms (alterations and emphasis in original) (quoting 42 U.S.C. § 1396(a)(13)(A) (1982 ed., Supp. V))); Wright v. City of Roanoke Redev. & Hous. Auth., 479 U.S. 418, 430–31, 107 S. Ct. 766, 773–74 (1987) (concluding a provision of the United States Housing Act of 1937 that provided a low-income family "shall pay as rent" a specified percentage of its income imposed a mandatory limitation on rent).  A provision that "reflects merely a 'congressional preference' for a certain kind of conduct rather than a binding obligation" does not suffice.  Wilder, 496 U.S. at 509, 110 S. Ct. at 2517.  Also, it is our charge to confirm that the language compels a State to afford the right the plaintiff seeks to vindicate as opposed to some other right.  Cf. Suter v. Artist M., 503 U.S. 347, 358–63, 112 S. Ct. 1360, 1367–70 (1992) (concluding the mandatory language of a provision of the Adoption Assistance and Child Welfare Act of 1980 requiring States receiving federal funds to provide a plan that "shall be in effect in all political subdivisions" did not render individually enforceable a

9

separate provision providing for "reasonable efforts" to prevent or eliminate removal of a child from his or her home).

There is no provision of § 926C that compels the States to provide LEOSA-compliant identification. Two of the five subsections of § 926C do not so much as mention identification. See 18 U.S.C. §§ 926C(b), (e). And those provisions that do refer to identification—(a), (c), and (d)—do not impose any obligation on the States to provide it. See id. §§ 926C(a), (c), (d).

Subsection (a) indicates that a retired officer may only carry a concealed weapon pursuant to LEOSA if he or she is also "carrying the identification required by subsection (d)." Id. § 926(a). This provision does not obligate States to create—much less issue—LEOSA-compliant identification. Rather, it puts the burden on the retired law enforcement officer who seeks to carry a concealed weapon pursuant to LEOSA to also hold LEOSA-compliant identification. Subsection (c) also mentions identification, see id. § 926C(c)(5), but only in noting that a person who hasn't been issued agency identification because of an agency's finding that he or she is unqualified for mental health reasons is not a qualified retired law enforcement officer. Id. Here again, this provision does not feature any language imposing an obligation on the States to issue identification under any circumstances. Finally, subsection (d) defines the two options for "the identification required by this subsection." Id. § 926C(d). But this provision is

10

purely definitional.  And this Court has made clear that definitional provisions are not enforceable under § 1983.  See 31 Foster Children v. Bush, 329 F.3d 1255, 1271 (11th Cir. 2003) ("Because §§ 675(5)(D) and (E) are definitional in nature, they alone cannot and do not supply a basis for conferring rights enforceable under § 1983.").  We thus conclude that no provision of § 926C compels a State to issue identification.  This being the case, we cannot say LEOSA provides the right Ms. Burban seeks to enforce.

C.

Beyond the Blessing test, we are also mindful of the "anticommandeering" doctrine.  This doctrine follows from the Tenth Amendment's explicit reservation of "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, . . . to the States respectively, or to the people."  U.S. Const. amend. X.  The Tenth Amendment confirms the idea that "the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States."  New York v. United States, 505 U.S. 144, 157, 112 S. Ct. 2408, 2418 (1992).  Thus, the Supreme Court has recognized that "[w]hile Congress has substantial powers to govern the Nation directly, including in areas of intimate concern to the States, the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions."  Id. at 162, 112 S. Ct. at 2421.

11

Citing the anticommandeering doctrine, the Supreme Court has invalidated federal laws that commandeer a State's legislative or administrative machinery for federal purposes.  For example, in New York v. United States, the Court struck down provisions of a federal statute that required a State to either take title to nuclear waste or enact certain state waste regulations.  Id. at 174–75, 112 S. Ct. at 2427–28.  Likewise, in Printz v. United States, 521 U.S. 898, 117 S. Ct. 2365 (1997), the Court struck down federal legislation compelling state law enforcement officers to perform federally mandated background checks on handgun purchasers. Id. at 933–35, 117 S. Ct. at 2383–84.  The Court explained that the anticommandeering principle extends even to federal laws that require States to perform only "discrete, ministerial tasks."  Id. at 929–30, 117 S. Ct. at 2382.  And this principle applies even when "States are not forced to absorb the costs of implementing a federal program," because "they are still put in the position of taking the blame for its burdensomeness and for its defects."  Id.  At the same time, the Court has clarified that anticommandeering principles do not bar federal laws that "'regulate[] state activities,' rather than 'seek[ing] to control or influence the manner in which States regulate private parties.'"  Reno v. Condon, 528 U.S. 141, 150, 120 S. Ct. 666, 672 (2000) (quoting South Carolina v. Baker, 485 U.S. 505, 514–15, 108 S. Ct. 1355, 1362 (1988)).

12

Ms. Burban argues that because Florida law already has mechanisms for providing identification cards to qualified retired law enforcement officers, her request does not raise a commandeering problem. See Fla. Stat. § 112.193(2); Fla. Admin. Code r. 11B-27.014. That argument fails on both factual and legal grounds. First, neither of the provisions that Ms. Burban points to establishes a procedural mechanism for issuing identification cards to qualified retired law enforcement officers. Section 112.193(2) of the Florida Code, which was enacted long before LEOSA, states that employers "may" provide retiring officers with an identification card marked "retired" as part of a commemorative service award. And Rule 11B-27.014 of Florida's Administrative Code establishes a procedure for providing firearm certifications but none for issuing photographic identification cards. If, as Ms. Burban contends, LEOSA required states to provide photographic identification cards to all qualified retired law enforcement officers, Florida would have to do more than either of those provisions contemplate to comply with LEOSA's mandate. Second, even if Ms. Burban was right about what those provisions say, she has provided no authority from this Circuit for the proposition that anticommandeering principles do not apply when a State voluntarily participates in administrative tasks similar to programming desired by the federal government but applies its own standards. Neither has our own search revealed any such authority. In any event, a State's decision to voluntarily follow certain

13

federal standards does not mean it must forgo any challenge to other federal standards with which it does not want to comply.

Ms. Burban's interpretation of § 926C would, in our view, raise serious anticommandeering concerns.  Contrary to her suggestion, her proposal that we require states to issue identification plainly seeks to control how States regulate private parties, as opposed to regulating state activities.  Cf. Reno, 528 U.S. at 151, 120 S. Ct. at 672 (noting that the Driver's Privacy Protection Act of 1994, which regulates disclosure of personal information contained in records of state motor vehicle departments, "does not require state officials to assist in the enforcement of federal statutes regulating private individuals").  We avoid statutory interpretations that raise constitutional problems.  See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575, 108 S. Ct. 1392, 1397 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").  Thus, beyond its failure to satisfy the Blessing criteria—which is alone dispositive—there are other good reasons for rejecting Ms. Burban's preferred interpretation.

14

D.

Ms. Burban's other arguments for why § 926C might afford a right to agency-identification are also unpersuasive. For example, she argues LEOSA's purpose, intent, and text demonstrate that Congress intended to extend to retired law enforcement officers the right to carry concealed firearms. She gleans from this general desire that Congress must have wanted to obligate agencies to issue LEOSA-compliant identification. But, as we have already explained, the rule is that Congress must have "unambiguously impose[d] a binding obligation on the States." Blessing, 520 U.S. at 341, 117 S. Ct. at 1359. We do not stack inference on inference to impose an obligation on the States that Congress did not obviously impose. There is simply no provision of § 926C that tells a State it must do as Ms. Burban asks.

We view Ms. Burban's focus on the overall purpose of LEOSA as misguided. Blessing teaches that we must identify the "most concrete, specific" right a plaintiff is asserting and assess whether Congress afforded that particular right. Id. at 346, 117 S. Ct. at 1362. We cannot interpret Ms. Burban's complaint as seeking to generally vindicate LEOSA rights. Because she has no enforceable right to agency-issued identification, her complaint must necessarily fail no matter what other rights LEOSA might confer. See id.

15

Ms. Burban also asks this Court to follow DuBerry v. District of Columbia, 824 F.3d 1046 (D.C. Cir. 2016), which is a decision of the D.C. Circuit. In DuBerry, four retired D.C. correctional officers sued the District of Columbia because it refused to certify that they had served as law enforcement officers. Id. at 1048, 1050. According to the officers' complaint, they could not get the firearm certification required by subsection (d)(2)(B) without certification of their prior law enforcement service. Id. The D.C. Circuit held that LEOSA created a right enforceable under § 1983. Id. at 1054–55.

To begin, DuBerry is not binding authority in this Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) ("Under the established federal legal system the decisions of one circuit are not binding on other circuits."). And we decline to follow it here.

First, the DuBerry plaintiffs asserted a different right than the one Ms. Burban seeks to vindicate here. In DuBerry, the plaintiffs sought only certification of the "historical fact[]" of their service. See 824 F.3d at 1050. They did not seek identification. Indeed, their complaint alleged that "each [plaintiff] has a photo identification card issued by the D.C. Department of Corrections stating that he is a retired employee of the D.C. Department of Corrections where he had the authority to arrest and apprehend, and to act in a law enforcement capacity." Id. (citing plaintiffs' amended complaint); see also DuBerry v. District of Columbia, 106 F.

16

Supp. 3d 245, 263 n.18 (D.D.C. 2015) ("Plaintiffs here do not assert a right to the identification required in subsection (d)."), reversed on other grounds by DuBerry, 824 F.3d at 1055.  Given Blessing's command that courts are to assess the specific, concrete rights a plaintiff asserts, 520 U.S. at 346, 117 S. Ct. at 1362, we do not read DuBerry as reaching the question presented here.

Second, we do not view the request in DuBerry to raise the commandeering issues present here.  That suit was not against a State or a political division within a State, but instead against the District of Columbia.  See Duberry, 824 F.3d at 1048.  The Constitution plainly recognizes that "Congress shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever," over the District as "the Seat of the Government of the United States."  U.S. Const. art. I, § 8, cl. 17 (emphasis added); see also Kendall v. United States ex rel. Stokes, 37 U.S. (12 Pet.) 524, 619 (1838) ("Congress has the entire control over the [D]istrict for every purpose of government.").  In fact, the D.C. Circuit noted in DuBerry that, although the District of Columbia raised the anticommandeering doctrine, it "cite[d] no authority that the doctrine is applicable to it."  824 F.3d at 1057.  Thus, for this reason as well, we do not consider DuBerry's analysis persuasive for deciding the question before us in this case.

17

\*\*\*

Because no provision of § 926C compels the States to provide LEOSA-compliant identification, we conclude LEOSA does not confer such right.  We therefore **AFFIRM** the dismissal of Ms. Burban's amended complaint.