MARTIN, Circuit Judge, concurring:
Like the Majority, I understand 18 U.S.C. § 3599 to authorize federally appointed (and federally paid) habeas counsel to appear in state proceedings.[1] See *1249 Harbison v. Bell, 556 U.S. 180, 185-87, 129 S. Ct. 1481, 1486-87, 173 L.Ed.2d 347 (2009). Yet I believe the Majority reaches the correct legal ruling when it holds that Mr. Bowles has not shown a substantial likelihood of success on the merits of his 42 U.S.C. § 1983 claim. Legal precedent tells me that 18 U.S.C. § 3599 does not unambiguously impose a binding obligation on the States to allow federally appointed habeas counsel to appear in state clemency proceedings to advocate for a death row inmate. See Blessing v. Freestone, 520 U.S. 329, 341, 117 S. Ct. 1353, 1359, 137 L.Ed.2d 569 (1997) (stating a federal statute must "unambiguously impose a binding obligation on the States" to be enforceable under § 1983 ). For that reason, I must agree that the right Mr. Bowles says Congress conferred through § 3599 is not enforceable in a § 1983 action. See id.; see also Burban v. City of Neptune Beach, 920 F.3d 1274, 1279-80 (11th Cir. 2019).
However, I believe the question presented by Mr. Bowles's case is fully answered by analysis of the third Blessing factor alone, which means there was no need for the Majority opinion to discuss the other factors. See Burban, 920 F.3d at 1279 ("If a provision fails to meet any one of the three Blessing factors, it does not provide a person with a federal right enforceable under § 1983."). With regard to the Blessing analysis contained in the Majority opinion, therefore, I join only that related to the third of its requirements. Neither do I join in the analysis contained in the Majority opinion regarding the requirements for a stay of execution, beyond that related to the first factor: substantial likelihood of success on the merits. See Hill v. McDonough, 547 U.S. 573, 584, 126 S. Ct. 2096, 2104, 165 L.Ed.2d 44 (2006) (explaining that inmates seeking a stay of execution "must satisfy all the requirements for a stay, including a showing of a significant possibility of success on the merits").
I also write separately to express my view that both Mr. Bowles and the Florida Commission on Offender Review (the "Commission") could have benefited by having counsel from the Capital Habeas Unit of the Federal Public Defender for the North District of Florida ("CHU") continue to represent Mr. Bowles in his state clemency proceedings. It is puzzling that the Commission barred the knowledgeable and willing CHU lawyers from representing Mr. Bowles. Just as I must acknowledge that Mr. Bowles may not enforce a legal right to be represented by counsel from the CHU, neither was there any legal impediment to those lawyers appearing on his behalf. Thus, it is not only mysterious but possibly tragic that counsel was turned away.
Attorneys from the CHU have specialized training in the intricacies of death penalty litigation. And Mr. Bowles's CHU counsel represented him in his federal habeas proceedings. As a result, they became intimately familiar with Mr. Bowles's history of being physically and sexually abused; the neglect and abuse he suffered at the hands of his mother; his intellectual disabilities; his early introduction to substance abuse; and the details of his life as a homeless child prostitute. This wealth of knowledge about Mr. Bowles would have aided the Commission members in learning whether he would be a good candidate for executive clemency. See Fla. Stat. § 947.13(e) (noting the Commission must report to the Clemency Board about an inmate's "social, physical, mental, and psychiatric conditions and histor[y]"); see also Am. Bar Ass'n, *1250 Death Without Justice: A Guide for Examining the Administration of the Death Penalty in the United States, 63 Ohio State L.J. 487, 511-12 (2002) (listing factors that may be considered during the clemency process).
Instead of hearing from Mr. Bowles's experienced and knowledgeable counsel, the Commission appointed a new lawyer. According to Mr. Bowles's filings, this new lawyer had never handled a death penalty case at any stage. Also, at the time of his appointment, this lawyer had no familiarity with Bowles's history. Perhaps it was for these reasons that the new lawyer welcomed participation by the CHU lawyers in Mr. Bowles's clemency proceedings. The Commission, on the other hand, was not welcoming at all. For me, the Commission's decisions to bar the appearance of experienced counsel casts a shadow over Mr. Bowles's clemency proceeding.
Particularly in cases where the State intends to take a man's life, clemency proceedings play an important role. Clemency power is "a prerogative granted to executive authorities to help ensure that justice is tempered by mercy." Cavazos v. Smith, 565 U.S. 1, 8-9, 132 S. Ct. 2, 7, 181 L.Ed.2d 311 (2011) (per curiam). And the Supreme Court has repeatedly recognized that "[c]lemency is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted." Herrera v. Collins, 506 U.S. 390, 411-412, 113 S. Ct. 853, 866, 122 L.Ed.2d 203 (1993) (footnote omitted); see also Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 288-89, 118 S. Ct. 1244, 1253-54, 140 L.Ed.2d 387 (1998) (O'Connor, J., concurring) (recognizing that death row inmates have a limited due process interest in their state clemency proceedings).[2] Clemency is "the fail safe in our criminal justice system." Harbison, 556 U.S. at 192, 129 S. Ct. at 1490 (2009) (quotation marks omitted). That the State of Florida would turn away competent counsel from Mr. Bowles' clemency proceeding devalues the role that clemency was long ago established to play in our criminal justice system.
Florida law gives the Commission the authority and responsibility to "conduct a thorough and detailed investigation into all factors relevant to the issue of clemency and provide a final report to the Clemency Board." Fla. R. Exec. Clemency 15(B); see Fla. Stat. § 947.13 (powers and duties of the commission). The Commission must report to the Clemency Board on "the circumstances, the criminal records, and the social, physical, mental, and psychiatric conditions and histories of persons under consideration [for clemency]." Fla. Stat. § 947.13(e). For inmates who have been sentenced to die at the hands of the state, yet who are seeking a commutation of their death sentence, the Commission must conduct "an interview with the inmate, who may have clemency counsel present." Fla. R. Exec. Clemency 15(B). This clemency process is likely the last opportunity a death-sentenced inmate has to persuade the State that his life is worth sparing. I cannot understand why Florida would fail to equip itself with the most fulsome presentation possible, when its charge is to be sure that the execution of a man is not a miscarriage of justice. The same holds true for its charge to examine whether a man warrants mercy.
When Mr. Bowles appeared for his clemency interview, he did not have the counsel who had been by his side through his federal habeas proceedings. This happened, even though federal law funds *1251 counsel for this purpose, and his habeas counsel was ready to represent him. See 18 U.S.C. § 3599(e). Mr. Bowles, the Commission, and the Clemency Board all would have benefitted from continuity of counsel. See Harbison, 556 U.S. at 193, 129 S. Ct. at 1490-91 (recognizing that in designing § 3599, "Congress likely appreciated that federal habeas counsel are well positioned to represent their clients in the state clemency proceedings that typically follow the conclusion of [federal habeas] litigation"). This is especially troubling because neither the District Court's records nor the records before this Court offer any explanation as to why the Commission turned away CHU counsel.
There are currently 343 men and women on Florida's death row. See Death Row Roster, Fla. Dep't of Corr., http://www.dc.state.fl.us/OffenderSearch/deathrowroster.aspx (last visited Aug. 16, 2019). Florida gives each of them an opportunity to seek clemency from the governor, "as a matter of grace," Woodard, 523 U.S. at 280-81, 118 S. Ct. at 1250 (plurality opinion). Grace would include, in my view, the opportunity for them to make their very best case for mercy.

The Majority Opinion seems to suggest that once "the State has already appointed counsel" to represent a death row inmate, § 3599 may not authorize federally appointed and paid counsel to represent their client in state clemency proceedings. Maj. Op. at 1240 n.7. However, the statute does not make this distinction:
Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.
18 U.S.C. § 3599(e).

This Court has recognized that the holding in Woodard was provided by Justice O'Connor's concurring opinion. See Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1268, 1269 n.2 (11th Cir. 2014) (per curiam).