*253 RAKOFF, District Judge.
Section 926A of Title 18 of the United States Code confers the following protection upon those who wish to engage in the interstate transportation of firearms:
Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver’s compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.
The provision amended a far more expansive entitlement to “transport an unloaded, not readily accessible firearm in interstate commerce,” which was passed just two months earlier as part of the Firearms Owners’ Protection Act. See Pub.L. No. 99-308, § 107(a), 100 Stat. 449 (May 19, 1986), amended by Pub.L. No. 99-360, § 1(a), 100 Stat. 766 (July 8, 1986). The question before us is whether section 926A, as amended, creates a right enforceable by the appellant, the Association of New Jersey Rifle and Pistol Clubs Inc. (“the Association”), pursuant to 42 U.S.C. § 1983.
The Association’s cause of action seeks injunctive relief pursuant to 42 U.S.C. § 1983 that would enjoin the Port Authority of New York and New Jersey and Scott Erickson (collectively, the “Port Authority”) from enforcing certain New Jersey statutes, which prohibit possession of a firearm without a permit and possession of hollow-point ammunition,[1] against non-resident members of the Association “who are entitled to transport firearms through New Jersey pursuant to 18 U.S.C. § 926A.” J.A. at 26-30. The Association seeks this relief because, it alleges, the Port Authority enforces these state gun laws in Newark Airport against non-resident members of the Association, who are thus “coerced and intimidated into taking one of two courses of action: (i) When traveling with firearms ... they avoid Newark Airport and other Port Authority sites to avoid unlawful arrest and/or detention ... even though they have a right ... to travel unmolested through such locations with firearms; or (ii) ... they refrain from possessing firearms when traveling through Newark Airport and other Port Authority sites.Id. at 29.[2]
On August 20, 2012, the district court granted the Port Authority’s motion for summary judgment, holding that section 926A does not create a right enforceable *254 under section 1983. Because we hold that, in enacting the amended section 926A, Congress did not intend to confer the right upon the Association’s non-resident members that the Association seeks to enforce in this case, we affirm.
Section 1983 imposes liability on anyone who, under color of state law, deprives a person “of any rights, privileges, or immunities secured by the Constitution and laws” of the United States. On its face, section 1983 provides a remedy for a violation of federal rights, privileges, or immunities, but “not merely a violation of federal law.” Blessing v. Freestone, 520 U.S. 329, 341, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 283-90, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). Determining whether a federal statute creates a federal right enforceable under section 1983 is a two-step process.
The first step is to determine whether the federal statute creates a federal right. To make this determination, three requirements must be met. “First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so ‘vague and amorphous’ that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States ... [i.e., it] must be couched in mandatory, rather than precatory, terms.” Blessing, 520 U.S. at 340-41, 117 S.Ct. 1353 (internal citations omitted).
If all three requirements are met, a rebuttable presumption arises that the statute creates a right enforceable under section 1983. In such circumstances, “[p]laintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal stat-
In our view, plaintiff here has failed to satisfy even the first requirement of the first step of the process, i.e., that Congress intended that section 926A benefit this particular plaintiff. This is evident from the plain meaning of the statute. Although the unwieldy sentence that comprises section 926A is drafted in a roundabout way, on a careful reading its language is clear and unambiguous. It begins by establishing a clear positive entitlement: a person who meets its requirements “shall be entitled” to transport firearms in certain circumstances. Cf. Gonzaga, 536 U.S. at 287, 122 S.Ct. 2268 (contrasting the rights-creating language of “no person ... shall be ... subjected” with language typical of spending clause statutes, e.g., “no funds shall be made available.”). But the part of the sentence that immediately follows expressly conditions this entitlement as only being operative “if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle.” 18 U.S.C. § 926A (emphasis supplied). utes.” Gonzaga Univ., 536 U.S. at 284, 122 S.Ct. 2268. However, in the second step of the Blessing analysis, this presumption may be overcome if a defendant shows that Congress has either expressly or impliedly foreclosed the section 1983 remedy for that particular right. Blessing, 520 U.S. at 341, 117 S.Ct. 1353. “Implied” foreclosure of a remedy—the more elusive rebuttal to the presumption that a federal right has a remedy under section 1983—means that notwithstanding the fact that Congress created an individual right with a given statute, Congress also “creat[ed] a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.” Id.
*255 It is plain from the latter condition that the statute protects only transportation of a firearm in a vehicle, and requires that the firearm and ammunition be neither readily nor directly accessible from the passenger compartment of such vehicle. In particular, the word “such,” in “such transporting vehicle,” by definition refers back to earlier part(s) of the sentence, and the only parts it could possibly refer to are the parts referring to the transportation of a firearm or ammunition. The use of “such” therefore makes clear that the transportation the statute protects must occur in a “transporting vehicle.”
Moreover, if there were any doubt about the statute’s vehicular limitation, the final part of the sentence that follows — the “Provided” clause — again makes clear that only vehicular transportation is included in the statutory grant. It states: “Provided, That in the case of a vehicle without a compartment separate from the driver’s compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.” 18 U.S.C. § 926A (emphasis supplied). This clause, on its face, presupposes transportation of the firearm in a vehicle.
It follows from this plain meaning that an ambulatory plaintiff who intends to transit through Newark Airport is outside the coverage of the statute.[3] But it is precisely such people whose alleged rights under section 926A the Association seeks here to vindicate.
Despite the plain meaning of the statute, the Association urges this Court to conclude that the “readily accessible” clause is “grammatically disconnected” from the rest of the statute and thus that the “operative entitlement” of the statute contemplates non-vehicular transportation of firearms. Aside from its violation of the most elementary rules of grammar and punctuation, this argument posits the absurdity that Congress intended — in a single sentence, no less — to create two disjunctive categories, one cabined with all kinds of conditions and the other with none. Thus, on this reading, the Association argues that because the first clause of the sentence is divorced from the rest, its members should be able to walk through Newark airport with their firearms in, for example, their wheeled luggage or in holsters attached to their belts. To account for the remainder of the sentence, the Association argues that it simply provides limitations on the special case of firearms and ammunition that are transported by vehicle.
This otherwise grammatically strained disjunctive reading of the statute, the Association argues, avoids the sin of rendering “directly” redundant to “readily,” since both terms purportedly convey the same meaning.[4] Yet “readily” and “directly” are clearly not redundant adverbs, and reading them both as part of the same limitation *256 upon the permissible accessibility of a firearm in a “transporting vehicle” offends no grammatical rule. On the contrary, reading “readily accessible” and “directly accessible” as both modifying the extent to which firearms and ammunition can be “accessible from the passenger compartment of such transporting vehicle” gives meaning to all of the statute’s terms: a key requirement of any statutory construction. That is to say, reading them as part of the same continuous entitlement to transport firearms in vehicles (i.e., the guns and ammunition must be neither readily nor directly accessible from the passenger compartment of a vehicle) renders neither adverb superfluous, and permits the Court to make sense of the final clause “suck transporting vehicle” without re-writing the statute to read “a transporting vehicle,” as the Association’s reading would in effect require.
Furthermore, the Association’s reading is unable to sensibly account for the “Provided” clause (“Provided, That in the case of a vehicle without a compartment ... ”). Under our straightforward reading, the proviso presumes, once more, that the protected transportation must be in a vehicle. But under the Association’s reading, the proviso is entirely unnecessary, for while, e.g., storage of a firearm in a glove box would possibly evade the limitation that firearms not be “directly” accessible in a vehicle, storage in the glove box would already be prohibited by the supposedly freestanding limitation that the firearms cannot be “readily accessible.” It is not credible that Congress would have added the entire “Provided” clause when, on the Association’s reading, it was entirely unnecessary. See Kungys v. United States, 485 U.S. 759, 778, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988) (plurality opinion by Scalia, J.) (noting the “cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant”).
And there is more, for even assuming, arguendo, some ambiguity in the wording of section 926A — and we find none — the legislative history strongly supports the view that the amended statute protects only vehicular transportation of firearms and ammunition. To be sure, the unusual circumstances attending the enactment of section 926A mean that the kind of legislative history to which we ordinarily accord the greatest weight, such as committee reports, is irrelevant here, since section 926A was the result of a last-minute amendment proposed on the floor of the Senate. See David T. Hardy, The Firearm Owners’ Protection Act: A Historical and Legal Perspective, 17 Cumb. L.Rev. 585, 625, 677 (1987). Nevertheless, “its late origin has given us a legislative history adequate to address most issues.” Id. at 678.
The present version of section 926A was intended to forge a compromise between those who supported the much broader version passed earlier and those who favored its total repeal. As Senator Kennedy noted when the current, final version of section 926A came to a vote in the Senate:
I would just like to note that in the compromise reached on the interstate transportation portions of the bill, it is the clear intent of the Senate that State and local laws governing the transportation of firearms are only affected if— first, an individual is transporting a firearm that is not directly accessible from the passenger compartment of a vehicle. That means it cannot be in the glove compartment, under the seat, or otherwise within reach. The only exception to this is when a vehicle does not have a trunk or other compartment separate from the passenger area. The weapon must be contained in a locked container other than the glove compartment or *257 console. Second, any ammunition being transported must be similarly secured.
132 Cong. Rec. 9607 (May 6,1986).[5]
In light of the plain meaning of the statute, fully corroborated by the legislative history, we hold that section 926A benefits only those who wish to transport firearms in vehicles — and not, therefore, any of the kinds of “transportation” that, by necessity, would be involved should a person like those represented by the Association wish to transport a firearm by foot through an airport terminal or Port Authority site. Here, the Association seeks injunctive relief that would permit its nonresident members to travel “unmolested” through Port Authority sites such as airports. Self-evidently, such travel must occur outside a vehicle, and thus will, in every instance, bring the Association’s members outside the particular class of persons to whom Congress intended to confer a right under section 926A. Consequently, the Association has no federal right to invoke and thus cannot avail itself of section 1983.
We are mindful that a divided panel of the Second Circuit — in addressing the overall question of whether persons like those represented by the Association have a remedy under section 1983 for purported violations of section 926A — reached the same result as we do, but for different reasons. See Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129 (2d Cir.2010). The majority of that panel held that section 926A does not create an enforceable right because its terms are too vague and *258 amorphous to satisfy the second Blessing factor. See id. at 139. In a concurrence (the reasoning of which was adopted by the District Court in our case), Judge Wesley disagreed that the statute was so vague and amorphous as to strain judicial competence, but nevertheless found that under the “second step” of the Blessing framework, Congress had impliedly foreclosed a section 1983 action under the statute insofar as it enacted section 926A against the background of the “remedial mechanisms” of direct appeal and collateral attack of criminal convictions. Id. at 150. Because, Judge Wesley reasoned, collateral attacks upon criminal convictions are subjected to particular procedures by the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), Congress has “impliedly” foreclosed a section 1983 remedy for violations of rights established by section 926A. Because, however, we find the first of the Blessing factors dis-positive, and conclude that Congress did not intend the amended section 926A to benefit those who wish to transport firearms outside of vehicles, we need not reach the concerns that motivated our sister Circuit in Torraco.
For the foregoing reasons, we will affirm the judgment of the District Court.
AFFIRMED

. See N.J. Stat. Ann. § 2C:39-5(b) and N.J. Stat. Ann. § 2C:39-3(f).

. In a prior non-precedential decision, another panel of this Court reversed the District Court’s dismissal of this case on standing grounds and directed the District Court to permit the Association to amend its complaint to allege facts sufficient to demonstrate standing. See Revell v. Port Auth. of N.Y. and N.J., 321 Fed.Appx. 113 (3d Cir.2009). The Association did so by properly asserting the rights of its non-resident members. While the Concurring Opinion below references a second reported opinion in Revell, the panel in that case expressly declined to reach the question before us. See Revell v. Port Auth. of N.Y. and N.J., 598 F.3d 128, 136 n. 13 (3d Cir.2010).

. We note that our reading of the statute is perfectly consistent with the view that the statute might protect travel that occurs via aircraft or train — each of these modes of travel might be considered "vehicular.” The relevant question is whether ambulatory travel (i.e., walking) through an airport terminal is also protected by the statute.

. While the Concurring Opinion states that the Association's reading of the statute is not "untenable,” we respectfully disagree. The critical word is "such” in "such transporting vehicle.” “Such is properly used as an adjective when reference has previously been made to a category of persons or things.” Bryan A. Garner, A Dictionary of Modem Legal Usage, 526-27 (1987). As noted, the only possible antecedent to which "such transporting vehicle” could refer is the transporting of a firearm mentioned in the main clause of the statute, from which it follows that both of the limiting conditions following the word "if” refer to vehicle transportation.

. In reviewing the legislative history of section 926A, it is crucial to distinguish which of the two versions of section 926A a given speaker or committee is describing. As noted above, the current section 926A narrowed a far more expansive version contained in the Firearm Owners’ Protection Act. Statements describing the earlier version of section 926A reveal that the problem Congress initially intended to remedy was that "[u]nder current law, such persons can be prosecuted under some State and local gun laws even where they are simply on a hunting trip, traveling to a sporting event, or moving.” See 131 Cong. Rec. S18177-78 (July 9, 1985) (statement of Sen. Dole). Thus, in some statements made while considering the current version, some members, in passing, referred back to this earlier purpose. See, e.g., 132 Cong. Rec. H4102-03 (Jun. 24, 1986) (statement of Rep. Hughes) (“[T]he purpose which everyone supported was to allow travelers who lawfully possessed weapons to travel to hunting grounds in other States.”). Such statements, which speak retrospectively about an earlier form of section 926A, do not bear upon the purpose of the current statute, which was intended as a compromise to address concerns about the expansiveness of the predecessor entitlement. The reason why the current language and the previous language of the statute were discussed at the same time was that, as part of a "horse trade” designed to prevent filibuster, the Senate first passed FOPA, including the "broader” predecessor of 926A, but immediately acted to amend 926A. See generally Hardy, supra, at 625. Unlike the statements quoted in the Concurring Opinion, infra, Senator Kennedy’s statements on the floor of the Senate, excerpted in full above, reflect the narrowed, compromise version of 926A that is the current federal law. As the final pre-vote statement summarizing the nature of the compromise reached, Senator Kennedy's statement is entitled to particular weight. The broader statements of opponents of the compromise, by contrast, are, given this legislative history, largely irrelevant. Of similarly diminished utility are statements that appear in committee reports relating to still earlier versions of the Firearm Owners Protection Act, which had a long and tortured history in Congress, see id,, though we note that even committee reports regarding the most expansive draft versions of section 926A assume that the statute’s protection would extend only to vehicular transportation. See, e.g., S.Rep. No. 98-583, at 28 (1984) ("It is anticipated that the firearms being transported will be made inaccessible in a way consistent with the mode of transportation — in a trunk or locked glove compartment in vehicles which have such containers, or in a case or similar receptacle in vehicles which do not.”) and S.Rep. No. 97-476, at 25 (1982).