**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2209
_____

FEDERAL LAW ENFORCEMENT OFFICERS
ASSOCIATION;
NEW JERSEY FRATERNAL ORDER OF POLICE;
RICHARD BOWEN;
JOSEPH JAKUBIEC;
CHRISTOPHER MARTINEZ

v.

ATTORNEY GENERAL NEW JERSEY;
SUPERINTENDENT NEW JERSEY STATE POLICE,
                                        Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-20-cv-05762)
District Judge: Honorable Zahid N. Quraishi
_____

Argued on March 30, 2023

Before MATEY, FREEMAN, and FUENTES, *Circuit Judges*

(Opinion filed:  February 14, 2024)

Angela Cai
David Chen    [**ARGUED**]
Timothy Sheehan
Office of Attorney General of New Jersey
Division of Law
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625
            *Counsel for Appellants*

Michael R. Darbee   [**ARGUED**]
Nicholas C. Harbist   [**ARGUED**]
Stephen M. Orlofsky
Blank Rome
300 Carnegie Center
Suite 220
Princeton, NJ 08540
            *Counsel for Appellees*

_____

OPINION OF THE COURT
_____


**FREEMAN**, *Circuit Judge*.

Retired law enforcement officers from various agencies claim that a federal statute gives them the right to carry concealed firearms in their home state of New Jersey.  New Jersey argues that the federal statute does not provide that

2

enforceable right. And even if there were such an enforceable right, New Jersey argues that the federal statute would apply only to officers who retired from federal or out-of-state law enforcement agencies—not to officers who retired from New Jersey law enforcement agencies. We conclude that the federal statute does provide certain retired officers (those who meet all the statutory requirements) with an enforceable right, and that right extends equally to officers who retired from New Jersey agencies and those who retired from federal or out-of-state agencies. The federal statute also preempts contrary aspects of New Jersey law. So we will affirm the District Court's order granting declaratory and injunctive relief to the retired officers.

I

This case involves dueling firearm licensing statutes. One is the federal Law Enforcement Officers Safety Act of 2004, 18 U.S.C. § 926C ("LEOSA"). The other is New Jersey's retired police officer permitting law, N.J.S.A. § 2C:39-6*l* ("RPO Law"). While both delineate when and how retired law enforcement officers may carry firearms without being subject to criminal penalties, the New Jersey law is more restrictive.

LEOSA provides: "Notwithstanding any other provision of the law of any State or any political subdivision thereof, an individual who is a qualified retired law enforcement officer and who is carrying the identification required by [this statute] may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce, subject to subsection (b)." 18 U.S.C. § 926C(a).[1]

_____

[1] Subsection (b) provides:

3

It defines "qualified retired law enforcement officer" ("QRLEO") as someone who satisfies seven enumerated criteria, including length of service in a law enforcement role, separation from the law enforcement agency in good standing, mental and physical fitness to carry, and a lack of other disqualifiers under federal law. § 926C(c). A QRLEO may carry a firearm only when he has in his possession identification confirming his status as a former officer and certifying that he has been qualified in firearms training within the past year. § 926C(d).

LEOSA's identification requirement can be satisfied in either of two ways, set forth in subsection (d) of the statute. *Id.* Both options contain two components: (i) "a photographic identification issued by the agency from which the individual separated from service as a law enforcement officer that identifies the person as having been employed as a police officer or law enforcement officer," and (ii) a statement that, within the last year, the retired officer satisfied the state's (or

---

This section shall not be construed to supersede or limit the laws of any State that—
      (1) permit private persons or entities to prohibit or restrict the possession of concealed firearms on their property; or
      (2) prohibit or restrict the possession of firearms on any State or local government property, installation, building, base, or park.

18 U.S.C. § 926C(b).

the law enforcement agency's) firearms training standards for the type of firearm being carried. § 926C(d)(1)–(d)(2). Under the first option ("(d)(1) identification"), both components appear in a single document issued by the law enforcement agency from which the officer retired, and the firearms training standards are "established by the agency." § 926C(d)(1). Under the second option ("(d)(2) identification"), the two components appear in two separate documents. § 926C(d)(2). The first (photographic identification and proof of previous law enforcement service) is issued by the retired officer's former employer. § 926C(d)(2)(A). The second (certification regarding firearms training) may be issued by the state or "by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within that State." § 926C(d)(2)(B). And the firearms training standards may be established by the state or, in the absence of state standards, by any law enforcement agency within the state. *Id.*

Like LEOSA, New Jersey's RPO Law allows certain retired law enforcement officers to carry a firearm if they meet certain qualifications, but the RPO Law requires retired officers to obtain a state-issued permit. N.J.S.A. § 2C:39-6*l*. And there are other key differences between the two statutes. One is the age limit: LEOSA imposes none, but the RPO Law prevents retired officers over the age of 75 from obtaining a permit to carry. *Compare* 18 U.S.C. § 926C(c), *with* N.J.S.A. § 2C:39-6*l*. Another difference is the treatment of hollow-point ammunition: the RPO Law prohibits retired officers from carrying it, but LEOSA does not. *Compare* 18 U.S.C. § 926C(e),[2] *with* N.J.S.A. § 2C:39-3f. The laws also require

---

[2] LEOSA defines "firearm" to include "ammunition not expressly prohibited by Federal law or subject to the provisions

5

retired officers to complete firearm qualification training at different frequencies: once a year under LEOSA, and twice a year under the RPO Law. *Compare* 18 U.S.C. §§ 926C(c)(4), (d), *with* N.J.S.A. § 2C:39-6*l*.

Additionally, LEOSA does not require the retired officer's former agency or state of residence to verify that the officer is a QRLEO. *See* 18 U.S.C. § 926C(c). Indeed, the statute is written such that advance verification is not possible. (One criterion for a QRLEO is that an individual "is not under the influence of alcohol or another intoxicating or hallucinatory drug or substance . . . ." § 926C(c)(6). This means a retired officer's status could change in the course of any given day—he could awake as a QRLEO and then consume enough alcohol to lose his qualification to concealed-carry a firearm.) In contrast, New Jersey will only issue an RPO permit when the State determines in advance that the applicant meets the RPO Law's qualifications and passes criminal and mental-health background checks. N.J.S.A. § 2C:39-6*l*(1)–(2); *see also* N.J. State Police Form SP-232, "Initial Application For a Retired Law Enforcement Officer Permit to Carry a Handgun," https://perma.cc/H8JK-7KYF; N.J. State Police Form SP-66, "Consent for Mental Health Records Search," https://perma.cc/8TUW-JMNV.

In October 2018, the New Jersey Attorney General's Office issued a document addressing certain "frequently asked questions" about the interplay between the two laws. It wrote that retired law enforcement officers who reside in New Jersey ("NJ RLEOs") "must meet each of the requirements of [the

---

of the National Firearms Act," 18 U.S.C. § 926C(e)(1), which hollow-point bullets are not, *see* Plaintiffs' Supp. App. 10 (Statement of Interest of the United States of America).

6

RPO Law] in order to carry a firearm . . . ." App. 74. It specified that "LEOSA . . . does not provide an alternate path to eligibility to carry a firearm . . . ." App. 73–74. It stated that LEOSA's purpose "is to bar criminal prosecution of retired [law enforcement officers] who carry concealed firearms in *interstate commerce*," App. 73 (emphasis added) (citing *In re Casaleggio*, 18 A.3d 1082, 1086 (N.J. Super. 2011)), so LEOSA: (1) does not apply to NJ RLEOs who carry within the state—those persons must obtain an RPO permit under state law and carry the permit at all times while carrying a firearm; and (2) allows NJ RLEOs to carry a firearm outside of New Jersey without an RPO permit. *See also Casaleggio*, 18 A.3d at 1086 (construing New Jersey Legislature's intent in referencing LEOSA in the RPO Law as "to permit retired law enforcement officers from other states . . . who are domiciled in New Jersey to carry a firearm, provided they meet the same training and qualification standards that New Jersey retirees must meet under the law" which "corresponds [to] the limited purpose of LEOSA"). The document also stated that LEOSA does not allow retired officers residing in New Jersey to carry hollow-point bullets because that would violate state law.

In May 2020, three individuals and two organizations—the Federal Law Enforcement Officers Association and the New Jersey Fraternal Order of Police—(together, "Plaintiffs") sued New Jersey officials (together, "New Jersey") to challenge the enforcement of the RPO Law. Plaintiffs alleged that they (that is, the individual plaintiffs and some of the organizations' members) are QRLEOs under LEOSA. They argued that LEOSA gives them a federal right to carry a firearm (defined to include hollow-point ammunition) anywhere in the United States—including within the State of New Jersey—and that LEOSA preempts any more burdensome

state requirements. They brought claims under 18 U.S.C. § 1983 and the Declaratory Judgment Act. They sought declaratory relief and an order enjoining New Jersey from (1) requiring QRLEOs to obtain an RPO Law permit, (2) arresting and prosecuting LEOSA-compliant QRLEOs under the RPO Law, and (3) imposing any other conditions to carry a firearm that are not required by LEOSA.

New Jersey initially moved to dismiss the complaint, but it withdrew that motion after the United States filed a statement of interest in the case. The United States stated that "LEOSA means exactly what it says": if Plaintiffs are (as they allege) QRLEOs with the requisite identification under LEOSA, they are entitled to carry a concealed firearm notwithstanding any provision of New Jersey law. Plaintiffs' Supp. App. 4, 9–10. It also stated that LEOSA's definition of "firearm" includes hollow-point bullets.

In April 2021, while the suit was ongoing in the District Court, the New Jersey Attorney General's Office issued another "frequently asked questions" document addressing LEOSA and the RPO Law. It departed from its earlier position about retired officers "who reside in New Jersey[] and who separated from an out-of-state or federal law enforcement agency . . . ." App. 189–90. It said those retired officers may carry a firearm in New Jersey without an RPO permit if they meet all LEOSA requirements. But it reiterated its view that LEOSA does not "provide an alternate path for [retired law enforcement officers] who separated from a New Jersey law enforcement agency and who reside in New Jersey" to carry a firearm in New Jersey without an RPO permit. App. 189. In effect, it clarified that retired officers from New Jersey agencies who live in New Jersey may be arrested and prosecuted for carrying a firearm without an RPO permit,

8

notwithstanding their compliance with LEOSA. And again, the document explained LEOSA's purpose as "preempt[ing] a state's ability to preclude, or change the requirements for, carrying the firearm *interstate . . . .*" *Id.* (quoting *In re Carry Permit of Andros*, 958 A.2d 78, 84 (N.J. Super. 2008) (emphasis added)); *see also Andros*, 958 A.2d at 85 (construing Congress's intent in enacting LEOSA as "authoriz[ing] a [firearm] carrier when licensed in one state to possess [the firearm] in another state").

Both sides moved for summary judgment. In June 2022, the District Court granted Plaintiffs' motion and denied New Jersey's. It found that the individual plaintiffs and some of the plaintiff organizations' members were QRLEOs with LEOSA-compliant identification. It also concluded that LEOSA grants those QRLEOs a right that is enforceable under Section 1983.

The District Court issued a declaration that (1) LEOSA preempts the RPO Law and the associated state statutes as applied to any QRLEO with LEOSA-compliant identification, regardless of their residence; and (2) any QRLEO with LEOSA-compliant identification may carry a concealed firearm and hollow-point ammunition without obtaining an RPO permit regardless of their residence or the agency from which they retired. It also issued a permanent injunction prohibiting the State of New Jersey from "arresting and/or prosecuting any QRLEO who has [LEOSA-compliant identification] regardless of their residence or the agency from which they retired." App. 4. New Jersey timely appealed.

9

## II

The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291.[3] We give de novo review to the District Court's interpretation of federal law and its preemption ruling. *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 687 (3d Cir. 2016) (providing the standard for preemption rulings); *Delaware County, Pa. v. Fed. Hous. Fin. Agency*, 747 F.3d 215, 220-21 (3d Cir. 2014) (providing the standard for statutory interpretation).

## III

LEOSA confers an enforceable right upon QRLEOs who are carrying LEOSA-compliant identification to carry a concealed firearm (subject to subsection (b)'s exceptions). And LEOSA expressly preempts New Jersey law to the extent that it imposes additional conditions or restrictions upon such QRLEOs who are in possession of compliant identification.

## A

---

[3] Whether a party has a valid cause of action under a federal statute presents a federal question, so our inquiry into whether the retired officers have a cause of action under Section 1983 is not jurisdictional. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the court's statutory or constitutional *power* to adjudicate the case." (quotations omitted)).

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (quoting 42 U.S.C. § 1983). The Supreme Court has explained that "[i]n order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Id.* And "[a]lthough federal statutes have the potential to create § 1983-enforceable rights, they do not do so as a matter of course." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023). Thus, courts must ascertain whether Congress has "unambiguously conferred" an individual right upon a class of beneficiaries. *Id.* (citing *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002)).

The Supreme Court's decision in *Gonzaga* sets forth the "method for ascertaining unambiguous conferral." *Talevski*, 599 U.S. at 183. That method requires courts to "employ traditional tools of statutory construction." *Id.* The *Gonzaga* test is satisfied when the statute is "phrased in terms of the persons benefited and contains rights-creating, individual-centric language with an unmistakable focus on the benefitted class." *Id.* (internal quotation marks and citation omitted). We must determine that Congress created a right *for* the persons benefited, not merely that those persons fall "within the general zone of interest that the statute is intended to protect." *Id.* (citation omitted). A statute will fail that test if it contains no rights-creating language, has an aggregate rather than an individual focus, and primarily serves to direct federal government funds. *Id.* at 183–84.

Once we are satisfied that a federal statute creates an individual right, the right-holder has a "rebuttable presumption that the right is enforceable under § 1983." *Blessing*, 520 U.S.

11

at 341; *see also Talevski*, 599 U.S. at 183, 186. "[T]he presumption recognizes that, even where Congress has unambiguously secured certain federal individual rights by law, it *may* have simultaneously given good reason (detectable with ordinary interpretive tools) to conclude that the § 1983 remedy is not available for those rights . . . ." *Talevski*, 599 U.S. at 186 n.13.

It is New Jersey's burden to rebut the presumption. *Id.*; *Gonzaga*, 536 U.S. at 284. It can do so by demonstrating that "Congress has either expressly or impliedly foreclosed the section 1983 remedy for that particular right." *Ass'n of N.J. Rifle & Pistol Clubs Inc. v. Port Auth. of N.Y. & N.J.*, 730 F.3d 252, 254 (3d Cir. 2013) (citing *Blessing*, 520 U.S. at 341). If Congress has not foreclosed the Section 1983 remedy, then right-holders have a private cause of action under Section 1983 to enforce their right. *Gonzaga*, 536 U.S. at 284. *See Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 423–24 (1987) ("We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right." (internal quotation and citation omitted)).

1

Applying the *Gonzaga* test, we conclude that LEOSA reflects Congress's clear and unambiguous intent to confer a right upon individual QRLEOs who comply with the statute's identification requirements to carry a concealed firearm. LEOSA's text demonstrates that Congress's "unmistakable focus" was on the individual right-holder. *Talevski*, 599 U.S. at 183 (quotation marks omitted). Congress used "individual-centric language," *id.*, when it conferred a benefit upon "*an individual* who is a qualified retired law enforcement officer

12

and who is carrying the identification required by [this statute]," 18 U.S.C. § 926C(a) (emphasis added).  And when it wrote that any such individual "may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce," *id,* it phrased the right in terms of the persons benefited, *Talevski*, 599 U.S. at 183.  LEOSA binds state actors by enabling the right-holder to carry a firearm "[n]otwithstanding any other provision of the law of any State or any political subdivision."  18 U.S.C. § 926C(a).  This means that individuals acting on behalf of a given state or political subdivision may not enforce firearms regulations that burden the right-holder's ability to carry under LEOSA.

The *Gonzaga* test seeks to distinguish rights-granting statutes from those "that focus on the person regulated rather than the individuals protected . . . ." *Gonzaga*, 536 U.S. at 287 (citation omitted); *see also id.* at 284 (rights-creating language is "phrased with an *unmistakable focus* on the benefited class" (quotation marks omitted)).  No particular language must be present in a statute to confer rights.  *See, e.g.*, *Talevski*, 599 U.S. at 184 (holding that the Federal Nursing Home Reform Act, which requires nursing homes to "protect and promote . . . *[t]he right* to be free from . . . any physical or chemical restraints . . . not required to treat *the resident's* medical symptoms" is rights-creating); *Gonzaga*, 536 U.S. at 284, 287 (recognizing that Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 "create individual rights" by providing that "[n]o person . . . shall . . . be subjected to discrimination").

Guided by Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 "as exemplars of rights-creating language," we have recognized that statutes phrased in terms of what a state must do for a specified class

13

of persons create enforceable rights. *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 189–90 (3d Cir. 2004). In *Sabree*, we evaluated three statutory provisions in the Medicaid Act, which provide:

> "A State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals," 42 U.S.C. § 1396a(a)(8);

> "[a] State plan for medical assistance must . . . provide . . . for making medical assistance available, . . . to . . . all [eligible] individuals," 42 U.S.C. § 1396a(a)(10); and

> "[t]he term 'medical assistance' means payment of part or all of the cost of the following care and services . . . for individuals . . . who are [eligible:] . . . services in an intermediate care facility for the mentally retarded . . . ." 42 U.S.C. § 1396d(a)(15).

*Id.* at 182 nn. 4, 5, 6 (emphases omitted). We held that these provisions grant eligible individuals a right to a medical assistance plan covering "medical services from an intermediate care facility for persons with mental retardation" with "reasonable promptness." *Id*. at 181–82, 190. Combined, these statutory texts showed that "Congress conferred specific entitlements on individuals in terms that could not be clearer," *id*. at 190 (cleaned up), even absent phrases like "right" or "entitlement." *See also Colon-Marrero v. Velez*, 813 F.3d 1,

18 (1st Cir. 2016) (holding that a statutory provision that "no registrant may be removed [from the official list of eligible voters] solely by reason of a failure to vote," 52 U.S.C. § 21083(a)(4)(A), "confers a right on every registrant not to be removed from a state's active registry for failure to participate in one general election" (cleaned up)).

And as Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 show, statutes that provide specified individuals with defined freedoms from certain state conduct are rights-creating. *Gonzaga*, 536 U.S. at 284, 287. We have determined that LEOSA's neighboring statute, 18 U.S.C. § 926A, "establish[ed] a clear positive entitlement" to "transport firearms in certain circumstances" because the statute stated that qualified persons "shall be entitled" to do so. *N.J. Rifle & Pistol Clubs Inc.*, 730 F.3d at 254. We see no meaningful difference between the phrase "shall be entitled to" carry "[n]otwithstanding" contrary state laws, 18 U.S.C. § 926A, and the phrase "may" carry "[n]otwithstanding" contrary state laws, § 926C(a). *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021) (requiring courts "to afford the law's terms their ordinary meaning" using "textual and structural clues") (internal quotations and citations omitted)). Both phrases permit, but do not mandate, an individual to engage in conduct without government interference. This is the nature of an individual right.

In prior cases, we applied the three-part *Blessing* test to determine whether Congress created a right in a federal statute. *See N.J. Rifle & Pistol Clubs Inc.*, 730 F.3d at 254–57. Under *Blessing*, a statute confers a right if the text meets each of three factors:

15

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Blessing*, 520 U.S. at 340–41 (internal citations omitted). But recent Supreme Court authority casts doubt upon the continued applicability of the *Blessing* factors. In its June 2023 *Talevski* opinion, the Supreme Court evaluated whether a statute created a right by using the *Gonzaga* test, without reference to the *Blessing* factors. *Talevski*, 599 U.S. at 183–84, 186. Still, the Supreme Court has not expressly held that the *Blessing* factors are no longer relevant. *See, e.g., Sabree*, 367 F.3d at 184 ("*Gonzaga* . . . carefully avoided disturbing, much less overruling, *Wright* [479 U.S. 418] and *Wilder* [*v. Va. Hosp. Ass'n*, 496 U.S. 498 (1990)]," the precedent "the *Blessing* Court drew on" to "formulate[] [the] three-prong test"). And, applying the *Blessing* factors, we reach the same result.[4]

---

[4] First, as noted above, the language of LEOSA shows that "Congress . . . intended [] the provision" to benefit qualifying retired law enforcement officers who are carrying subsection (d) identification, which include some of the plaintiffs here (at the times when they meet both the historical and the dynamic LEOSA conditions). *Blessing*, 520 U.S. at 340. Second, "the right assertedly protected by" LEOSA is a right to carry

16

We join the D.C. Circuit in holding that LEOSA confers an individual right upon QRLEOs with compliant identification. In *DuBerry v. District of Columbia*, that court reasoned that the "notwithstanding" clause of LEOSA's subsection (a) contains "categorical language" reflecting Congress's intent to "preempt state and local law [by] grant[ing] qualified law enforcement officers the right to carry a concealed weapon." 824 F.3d 1046, 1052 (D.C. Cir. 2016). And that clause shows that Congress enacted LEOSA for the direct benefit of qualified individuals. *Id.* The court also observed that LEOSA's text imposes "a mandatory duty on the states to recognize" such officers' right to carry. *Id.* at 1053; *see also id.* at 1053–54 ("Its plain text, then, confers upon a specific group of individuals a concrete right the deprivation of which is presumptively remediable under Section 1983.").[5] We agree.

---

notwithstanding contrary local laws, so it "is not so 'vague and amorphous' that its enforcement would strain judicial competence." *Id.* at 340–41. Third, the "notwithstanding" clause "unambiguously impose[s] a binding obligation on the States" to refrain from enforcing local laws that interfere with the right to carry, and it does so "in mandatory, rather than precatory, terms." *Id.* at 341.

[5] The D.C. Circuit explained that the three *Blessing* factors support its conclusion that "the text of the LEOSA creates the type of right remediable under Section 1983." *DuBerry*, 824 F.3d at 1052–54.

The Fourth Circuit held otherwise in *Carey v. Throwe*, 957 F.3d 468 (4th Cir. 2020).[6] First, it stated that LEOSA "lacks any express rights-creating language." *Id.* at 479. The court noted that the statute "states that certain qualified officers 'may' carry concealed firearms under certain circumstances," and it reasoned that this is "precatory rather than mandatory language." *Id*. Second, the court stated that LEOSA lacks an express remedial provision. *Id.* ("This omission . . . is telling because Congress passed LEOSA after the *Blessing* and *Gonzaga* Courts made apparent that a statute would need to be unambiguous for it to be enforceable under § 1983."). Third, the court reasoned that LEOSA does not unambiguously bind the states because it provides them discretion over whether to issue LEOSA identification and what to require of individuals seeking that identification. *Id.* at 479–80. It stated, therefore, that the statute merely "prevent[s] states from prosecuting out-of-state officers who choose to carry under a LEOSA-compliant permit already issued." *Id*. at 480 (emphasis omitted).

We decline to follow the Fourth Circuit's path. By treating the word "may" in Section 926C(a) as "precatory rather than mandatory language," *id.* at 479, the court construes

[6] Although the Eleventh Circuit has addressed LEOSA, it has not considered whether it creates an individual right for certain persons to concealed-carry. In *Burban v. City of Neptune Beach*, it held that LEOSA does not grant retired law enforcement officers a right to compel governments or law enforcement agencies to issue LEOSA-compliant identification. 920 F.3d 1274, 1277–79 (11th Cir. 2019). It remained silent as to "what other rights LEOSA might confer." *Id.* at 1282.

18

the word divorced from its neighboring words. *See Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 634–35 (2012) ("[A] word is given more precise content by the neighboring words with which it is associated."). Although "'may' . . . usually implies some degree of discretion," *Carey*, 957 F.3d at 479 (quoting *United States v. Rodgers*, 461 U.S. 677, 706 (1983)), when used in LEOSA the word "may" grants discretion *to the QRLEO* who may choose whether to carry a firearm. It does not grant states discretion about whether to allow a QRLEO with compliant identification to concealed-carry a firearm. To the contrary, the statute's text unambiguously allows QRLEOs with compliant identification to concealed-carry "notwithstanding" contrary state law. 18 U.S.C. § 926C(a).

Moreover, there is no requirement that Congress include an express remedial provision in a rights-creating statute. As the Supreme Court held in *Gonzaga*, "where a statute is phrased in . . . explicit rights-creating terms," plaintiffs suing under Section 1983 "do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes." *Gonzaga*, 536 U.S. at 284.[7] While LEOSA may not require states to issue LEOSA

---

[7] New Jersey notes that LEOSA's neighboring statute, 18 U.S.C. § 925A, provides a limited remedy for individuals erroneously denied a firearm. But Section 925A is not an appropriate comparator. New Jersey does not argue that Section 925A contains any rights-creating language, and no such language is apparent from that statute's text. In the absence of a right, the presence of a remedy in a statute is irrelevant to our analysis.

identification or adopt firearms qualification training standards, it *does* require states to recognize existing LEOSA-compliant identification that a retired officer has obtained from his former agency—whether that agency is within the retired officer's state of residence or elsewhere.[8]

2

Because we hold that LEOSA confers upon certain retired law enforcement officers a right to concealed-carry a firearm, we next must consider whether the right can be enforced via 42 U.S.C. § 1983. *Talevski*, 599 U.S. at 186. LEOSA's text shows that Congress has not foreclosed a Section 1983 remedy for this right.

LEOSA "lacks any indicia of congressional intent to preclude § 1983 enforcement . . . ." *Talevski*, 599 U.S. at 188. Congress did not include any language expressly foreclosing a Section 1983 remedy. *Id.* at 183. Nor did it create a remedial

---

[8] We are not persuaded by New Jersey's arguments to the contrary. New Jersey argues that it may choose to recognize only (d)(1) identification—it need not also recognize (d)(2) identification. That argument is belied by the statutory text. LEOSA applies to a QRLEO who is carrying (d)(1) identification "*or*" (d)(2) identification. 18 U.S.C. § 926C(d)(1)–(2) (emphasis added). Without any evidence or arguments to the contrary, we assume Congress's use of the word "or" has its "ordinary disjunctive meaning." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018). So states must recognize the right of a QRLEO who is carrying either (d)(1) identification *or* (d)(2) identification, regardless of the identification a state may choose to issue to its own law enforcement officers.

scheme within LEOSA itself that is incompatible with Section 1983 enforcement. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005) (quotation and citation omitted); *Talevski*, 599 U.S. at 187 ("[T]he *sine qua non* of a finding that Congress implicitly intended to preclude a private right of action under § 1983 is incompatibility between enforcement under § 1983 and the enforcement scheme that Congress has enacted." (citation omitted)).

New Jersey argues that LEOSA's placement within the criminal code implies that Congress intended LEOSA to function as an immunity from prosecution rather than as a right remediable via Section 1983. But Congress did not foreclose a cause of action here, as it has done with rights it created elsewhere in the criminal code. *E.g.*, 18 U.S.C. §§ 3771(a), (d)(6) (providing "[a] crime victim" with certain "rights" but stating "[n]othing in this chapter shall be construed to authorize a cause of action for damages or to create, to enlarge, or to imply any duty or obligation to any victim or other person for the breach of which the United States or any of its officers or employees could be held liable in damages."). And, of course, Section 1983 by its terms provides a cause of action for "the deprivation of any rights, privileges, *or immunities* secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added); *see also, e.g.*, *Playboy Enters., Inc. v. Pub. Serv. Comm'n of P.R.*, 906 F.2d 25, 32 (1st Cir. 1990) ("We have no doubt the protection from liability provided cable operators by [47 U.S.C.] § 558 . . . is an 'immunity' created by federal law and enforceable by the courts" through Section 1983).

New Jersey has not carried its burden to rebut the presumption that a LEOSA right-holder may enforce his right under Section 1983. Therefore, QRLEOs with LEOSA-

21

compliant identification may enforce their right to concealed-carry through Section 1983's private right of action.[9]

B

As discussed above, LEOSA gives QRLEOs with the requisite identification a right to concealed-carry a firearm. And when Congress enacted LEOSA, it expressly preempted contrary state law. So New Jersey may not limit the LEOSA right or burden that right by imposing additional requirements upon right-holders.

Under the Supremacy Clause, the laws of the United States are "the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. When "Congress enacts a law that imposes restrictions or confers rights on private actors [and] a state law confers rights or imposes restrictions that conflict with the federal law[,] . . . the federal law takes precedence and the state law is preempted." *Murphy v. Nat'l Coll. Athletic Ass'n*, 584 U.S. 453, 477 (2018). "Put simply, federal law preempts contrary state law." *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 162 (2016).

Nonetheless, our preemption analysis must be "rooted in the respect for states as independent sovereigns in our

---

[9] Because we conclude that the plaintiffs may enforce their rights under Section 1983, they may seek declaratory relief under the Declaratory Judgment Act. 28 U.S.C. § 2201 (enabling a party to bring a civil action to "declare the rights and other legal relations of any interested party seeking such declaration" when the case is "within [the court's] jurisdiction").

22

federal system." *In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 365 (3d Cir. 2012). So we are "guided by two principles." *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 288 (3d Cir. 2020). First, we rely on "traditional tools of statutory interpretation" to discern Congress's intent in enacting the federal law at issue. *Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1901 (2019). The statute must reflect that preemption is "the clear and manifest purpose of Congress." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 542 (2001) (citation omitted). And second, we presume that Congress did not intend to preempt state law, especially "when the state is exercising its police power." *Navient Corp.*, 967 F.3d at 288.

"State law may be preempted 'by express language in a congressional enactment . . . .'" *Fed.-Mogul Glob.*, 684 F.3d at 364 (quoting *Lorillard Tobacco*, 533 U.S. at 541). But even then, we must address "the scope of the preemption provision." *Farina v. Nokia Inc.*, 625 F.3d 97, 118 (3d Cir. 2010). We construe the preempted domain narrowly in deference to state sovereignty. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

In LEOSA, Congress's intent to preempt contrary state law is express and unmistakable.[10] The statute opens by stating: "Notwithstanding any other provision of the law of any State or any political subdivision thereof" a QRLEO carrying the requisite identification may concealed-carry a firearm that has traveled in interstate commerce. 18 U.S.C. § 926C(a). It "is difficult to imagine" a clearer statement of preemption.

---

[10] Because LEOSA expressly preempts contrary state and local law, we need not address conflict preemption or field preemption. *See Navient Corp.*, 967 F.3d at 287–88 (summarizing the "three classes of preemption").

*Fed.-Mogul Glob.*, 684 F.3d at 369; *see also id.* (concluding that "[t]he plain language of [11 U.S.C.] § 1123(a) evinces Congress's clear intent to preempt state law" because the statute's "'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions" (cleaned up)); *DuBerry*, 824 F.3d at 1053 (discussing the "categorical preemption of state and local law standing in the way of the LEOSA right to carry").

LEOSA's text also clarifies the scope of the preemption provision. Subsection (b) includes a list of laws that are *not* preempted: state laws that prohibit or restrict firearm possession on state or local government property, and state laws that allow private parties to prohibit or restrict concealed-carry on their property. 18 U.S.C. § 926C(b)(1)–(2). By implication, all other state or local laws that conflict with LEOSA are inapplicable to LEOSA right-holders. *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017) (under the interpretive canon *expressio unius est exclusio alterius*, "expressing one item of an associated group or series excludes another left unmentioned" (cleaned up)).

New Jersey urges us to adopt the Fourth Circuit's view that LEOSA's "notwithstanding" clause preempts only those laws "that could be used to criminally prosecute a LEOSA-qualified officer for carrying a concealed firearm *across state lines*." *Carey*, 957 F.3d at 480 (emphasis added). But that would impose an atextual limitation on the scope of LEOSA's preemption of state and local law.[11] LEOSA preempts any state

_____

[11] Likewise, New Jersey's interpretation of LEOSA's interstate commerce provision is inconsistent with the statute's plain text. *See* Appellant Br. at 4 (contending that LEOSA's purpose

law that directly conflicts with its provisions such that "the two cannot be reconciled or consistently stand together." 18 U.S.C. § 927.

We will be specific about the preemption arguments in this case. We hold that—subject to the exceptions in LEOSA's subsection (b)—LEOSA preempts the following provisions of New Jersey law, as applied to QRLEOs who are carrying subsection (d)(1) or (d)(2) identification:

(1)     LEOSA's definition of "firearm," 18 U.S.C. § 926C(e)(1), preempts New Jersey law that bars the carrying of hollow-point ammunition, N.J.S.A. § 2C:39-3f;

(2)     LEOSA's definition of "qualified retired law enforcement officer," § 926C(c), preempts New Jersey law limiting an individual's ability to concealed-carry a firearm on the basis of age, state of residence, or jurisdiction of former law enforcement service, § 2C:39-6*l*; and

(3)     LEOSA's definition of required identification, § 926C(d), preempts New Jersey law that requires individuals to obtain additional identification and/or more frequent firearms

---

is to "allow[] interstate concealed carry by retired officers already approved to carry by their home States"). LEOSA requires that the *firearm* at issue has travelled in interstate commerce—not that the QRLEO has personally carried the firearm over state lines. 18 U.S.C. § 926C(a) (certain individuals "may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce").

25

certification training before carrying a firearm, § 2C:39-6*l*.

New Jersey argues that construing LEOSA to preempt the RPO Law will burden active law enforcement officers in the field.[12] We understand and appreciate that concern. But implementation challenges cannot override Congress's

---

[12] New Jersey does not challenge the scope of the District Court's injunction. (It only argues that the District Court misinterpreted LEOSA such that the injunction must be vacated.) We note, however, that the injunction does not appear to be limited to the plaintiffs in this case. App. 4 (granting injunctive relief to "any QRLEO who has identification required by 18 U.S.C. § 926C(d)"). *See Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 888 (3d Cir.), *aff'd on reh'g*, 809 F.2d 979 (3d Cir. 1986) (holding that, in a non-class-action, the plaintiff is only entitled to obtain injunctive relief for itself). Further, the injunction appears to bar New Jersey from arresting or prosecuting a QRLEO who has subsection (d) identification *for any reason*. *See* App. 4 ("[T]he State of New Jersey is enjoined from arresting and/or prosecuting any QRLEO who has identification required by 18 U.S.C. § 926C(d) regardless of their residence or the agency from which they retired . . . ."). But presumably QRLEOs remain subject to arrest or prosecution for violating laws unrelated to their LEOSA-compliant concealed-carry. Nevertheless, because this appeal is devoid of any overbreadth arguments, we make no rulings on the scope of the injunction. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) (declining to reach an issue appellants failed to raise on appeal).

26

unmistakable intent to preempt contrary state law. And active law enforcement officers in New Jersey are already faced with determining whether retirees from federal or out-of-state law enforcement agencies are qualified to carry under LEOSA. App. 189–90 (New Jersey Attorney General's Office's statement that QRLEOs who meet all the requirements of LEOSA, who reside in New Jersey, and who separated from an out-of-state or federal law enforcement agency may carry a firearm without applying for an RPO Law permit). Determining LEOSA qualifications for retirees from New Jersey law enforcement agencies is unlikely to be more burdensome.[13]

---

[13] The District Court found that certain plaintiffs are QRLEOs who possess compliant subsection (d) identification. New Jersey does not contest this finding, and we do not disturb it. But we note (and Plaintiffs acknowledge) that an individual's compliance with LEOSA's requirements must be assessed at the time of his concealed-carry. *See* 18 U.S.C. § 926C(a) (a QRLEO must be carrying subsection (d) identification while carrying a concealed firearm); § 926C(c)(6)-(7) (a QRLEO must not be under the influence of alcohol or certain other substances and must not be prohibited by Federal law from receiving a firearm); § 926C(d) (compliant identification must indicate that the QRLEO has completed firearms training "to carry a firearm of the same type as the concealed firearm" no more than one year before the concealed-carry); *see also* Appellees' Br. at 34 (acknowledging that some LEOSA qualifications "must be determined in real-time, such as whether a retired officer is intoxicated or otherwise disqualified from carrying a firearm under federal law").

\*     \*     \*

We may not ignore Congress's unambiguous conferral of an individual right or its clear intent to preempt state law. In LEOSA, Congress granted certain retired law enforcement officers a right to carry a concealed firearm. And LEOSA expressly preempts contrary provisions of state law.

We will affirm the District Court's order.